**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY REINHARDT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:23-cv-01475 |
| | ) |
| CITY OF CHESTERFIELD, MISSOURI, | ) **DEMAND FOR JURY TRIAL** |
| LT. LANCE ROUSE, | ) |
| AND OFFICER GREGORY RUPP, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

Plaintiff Timothy Reinhardt ("Mr. Reinhardt") brings this cause of action pursuant to 42 U.S.C. § 1983 to assert constitutional rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, which were violated by Defendants City of Chesterfield, Missouri ("Defendant Chesterfield" or "City"), Lt. Lance Rouse, and Officer Gregory Rupp (collectively, the "Defendants"), through their use and abuse of an unlawful "Wanteds" procedure.

## **PARTIES**

1. Mr. Reinhardt is a citizen of the United States and a resident of the City of St. Louis, Missouri.

2. Defendant City of Chesterfield is a political and geographic subdivision of the State of Missouri existing pursuant to Missouri law.

3. Defendant Lance Rouse is a Lieutenant employed by the Chesterfield Police Department. All of Defendant Rouse's actions set forth in this Complaint were done under color of law. Defendant Rouse is sued in his individual capacity.

4. Defendant Gregory Rupp is an Officer at the Chesterfield Police Department. All of Defendant Rupp's actions set forth in this Complaint were done under color of law. Defendant Rupp is sued in his individual capacity.

## JURISDICTION AND VENUE

5. This cause is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants are located, and all of the incidents giving rise to this suit occurred, in this judicial district.

## ALLEGATIONS

6. On November 17, 2022, Mr. Reinhardt drove to a store near Lindbergh Boulevard in South St. Louis County.

7. Mr. Reinhardt purchased a cord for his cellular phone, paid for it, and left soon after.

8. He did not commit theft.

9. When Mr. Reinhardt returned to his vehicle, he unpackaged the cord he had just purchased and plugged it in so that he could charge his phone.

10. After Mr. Reinhardt paid for his item and left the store, a different man walked into the store and stole a personal computer.

11. The store manager saw this man, who was not Mr. Reinhardt, exit the store. The store manager claimed that this man stole a computer from the store.

12. The store manager did not follow the thief immediately out of the building nor did she track his direct whereabouts on the store's surveillance cameras.

2

13. At some point after the thief left with the computer, the store manager belatedly went into the parking lot, where she saw Mr. Reinhardt — and not the thief — in Mr. Reinhardt's vehicle.

14. The store manager took a photo of Mr. Reinhardt's vehicle and license plate, wrongly believing Mr. Reinhardt was the thief.

15. The store manager then called the St. Louis County Police Department ("SLCPD"), who came and purportedly initiated an investigation.

16. The store manager also provided the photo she took of Mr. Reinhardt's vehicle to the SLCPD.

17. A simple review of the store video would have shown Mr. Reinhardt exiting the store before the thief entered it, completely exonerating Mr. Reinhardt. The store video would have also confirmed that Mr. Reinhardt did not possess a computer when he left the store.

18. Using only the photograph of Mr. Reinhardt's vehicle provided by the store manager and not the store videos, SLCPD ran a search of the vehicle and learned the vehicle was registered to Mr. Reinhardt.

19. After learning the name of Mr. Reinhardt, SLCPD obtained his photograph and brought a photo array to the store manager. The store manager incorrectly identified Reinhardt as the person whom she believed stole the computer.

20. Once again, SLCPD failed to compare the photo of the thief from the store's video system with the photo of Reinhardt. Doing so would have clearly exonerated Reinhardt.

21. Based on the foregoing information, SLCPD put out a warrantless "Wanted" for Mr. Reinhardt's arrest.

22. Less than two weeks later, on November 27, 2022, Mr. Reinhardt was finishing a courier route in Chesterfield and heading back to his home in the City.

23. On Interstate 64/40 headed eastbound, Mr. Reinhardt noticed police lights behind him.

24. He pulled over carefully, at which point Defendant Rouse commanded him on the police vehicle loudspeaker to get out of the vehicle and walk to the police car.

25. As Mr. Reinhardt walked carefully to the police vehicle, cars whizzed past him on the interstate.

26. Neither Defendant Rouse nor Defendant Rupp had probable cause to arrest Mr. Reinhardt and conducted no investigation to determine whether probable cause existed to substantiate an arrest.

27. Solely on the basis of the Wanted, Defendants Rouse and Rupp arrested Mr. Reinhardt and brought him to Chesterfield PD. Neither Defendant Rouse nor Defendant Rupp made any effort to determine the veracity, viability, or legality of the underlying Wanted.

28. There were no exigent circumstances to justify Mr. Reinhardt's arrest, there was no evanescent evidence, and he was not a fleeing felon. In the two weeks since he first was considered a suspect, no law enforcement agency applied for a warrant for Mr. Reinhardt's arrest.

29. Prior to his encounter with Defendants Rouse and Rupp, Mr. Reinhardt had a spotless criminal record and had never been arrested or jailed or even so much as been fingerprinted by police.

30. Nevertheless, Reinhardt was booked, photographed, and had his fingerprints taken at the Chesterfield jail.

31. At the Chesterfield jail, Mr. Reinhardt was provided with no information regarding his detention, nor was he provided any process. He was simply forced to sit at the jail based upon Chesterfield's decision to enforce the extrajudicial warrant issued by St. Louis County.

32. Once at the Chesterfield jail, Mr. Reinhardt waited for several hours until officers from St. Louis County picked him up and brought him to the County Justice Center in Clayton.

33. Mr. Reinhardt has suffered damages of emotional distress, humiliation, loss of liberty, physical discomfort, and loss of sleep.

34. On November 1, 2022—three weeks before Mr. Reinhardt's arrest—the Eighth Circuit declared St. Louis County's system of issuing Wanteds to be largely unconstitutional and limited to exigent circumstances where a warrant cannot be obtained in a timely manner. *Furlow v. Belmar*, 52 F.4th 393 (8th Cir. 2022).

35. The Furlow Court further held:

> The old west-style "Wanted" posters and reward notices may have once permitted warrantless arrests of suspects pursuant to notices like Wanteds… but that practice lost its vitality in the twentieth century. Since at least the 1970s, case law has established that a warrantless arrest prompted by a notice from one officer to another is unconstitutional unless: (1) the arresting officer is able to make an independent finding of probable cause, *see Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568–69, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) or (2) the arresting officer has been working closely with the officer who made the initial and valid probable cause determination, *see, e.g., United States v. Stratton*, 453 F.2d 36, 37 (8th Cir. 1972); *United States v. Heisman*, 503 F.2d 1284, 1286–87, 1289–90 (8th Cir. 1974).

*Furlow v. Belmar*, 52 F.4th 393, 406 (8th Cir. 2022) (parenthetical explanations omitted).

36. Despite this long-standing case law, Chesterfield had for years enforced a policy of issuing and detaining individuals upon Wanteds.

37. After the *Furlow* ruling further clarified Eighth Circuit case law, Defendant City of Chesterfield still continued to unlawfully arrest and detain individuals on Wanteds.

## **CLASS ALLEGATIONS**

38. Mr. Reinhartdt brings this action on behalf of himself and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

39. The class is defined as: all people who have been arrested by or held on behalf of the City of Chesterfield because of a Wanted from November 20, 2018 to present.

40. A class action is a superior means by which Plaintiffs and putative class members can challenge Chesterfield's unlawful custom.

41. This action is brought and may properly be maintained as a class action pursuant to Rules 23(a)(1)-(4) and 23(b)(1) and (3) of the Federal Rules of Civil Procedure.

42. The case also meets the requirements of Federal Rule of Civil Procedure 23(c)(4) as it presents core issues that, when resolved, drive resolution of liability for the class.

43. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

44. The class meets the requirements of Federal Rule of Civil Procedure 23(a), as follows:

   a. The requirements of Rule 23(a)(1) are satisfied because the class is sufficiently numerous that joinder is impractical. Upon information and belief, there are at least fifty such members of the class.

   b. The requirements of Rule 23(a)(2) are satisfied because there are questions of law or fact common to the class. The common questions of law include:

      i. the nature and extent of Chesterfield's participation, control, ratification, and promotion of the use of Wanteds for the purpose of effecting unlawful and warrantless, investigative, punitive, retaliatory or arbitrary detentions;

    ii. the facts concerning how the system of Wanteds functioned, including all police procedures, electronic systems, and policies relating to the issuance and execution of Wanteds;

    iii. whether Chesterfield's policy and conduct in failing to seek a warrant from a neutral and detached magistrate and instead relying on their own determination to justify the issuance of a Wanted constitutes a violation of the Fourth and Fourteenth Amendment to the United States Constitution;

    iv. whether Chesterfield's policy and conduct in failing to promptly seek valid warrants for Mr. Reinhardt and the other class members after the individuals were arrested pursuant to Wanteds constitutes a violation of the Fourth and Fourteenth Amendments to the United States Constitution;

    v. whether Chesterfield's policy and conduct in detaining Mr. Reinhardt and the other class members arrested on Wanteds for a period of 24 hours violates the Fourth and Fourteenth Amendments.

45. The requirements of Rule 23(a)(3) are satisfied because Mr. Reinhardt's claims are typical of the claims of the class he seeks to represent.

46. The requirements of Rule 23(a)(4) are satisfied because Mr. Reinhardt will fairly and adequately protect the interest of the class he seeks to represent. Mr. Reinhardt has no interests antagonistic to those of the members of the class he seeks to represent. Moreover, he has retained counsel experienced in litigating class actions and civil rights claims.

47. The class meets the requirements of Rule 23(b)(l) because prosecution of separate actions by individual members of the class would create a risk of inconsistent or incompatible standards of conduct by Chesterfield.

48. Additionally, the class meets the requirements of Rule 23(b)(3) because common questions predominate over individual questions, and prosecution of this action as a class action is the superior method of adjudication. Factors that militate in favor of certification under Rule 23(b)(3) include:

   a) The interest of members in individually controlling the prosecution of separate actions is minimal and would be burdensome in view of the evidence required and costs of proving the claims alleged herein;

   b) It is desirable to concentrate the litigation in the United States District Court for the Eastern District of Missouri because the events occurred in this district and involve federally-protected rights; and

   c) Certification of the class will achieve great economies of time, effort, and expense and promote uniformity of decisions for the members of the class, thereby making a class action the superior method of adjudicating this controversy;

   d) A single action preserves court resources and avoids undue complication and costs;

   e) A single action preserves the resources of the City of Chesterfield.

## COUNT I
### Unlawful Seizure in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution Cognizable Under 42 U.S.C. § 1983 by Mr. Reinhardt against Defendants Rupp and Rouse.

For his cause of action against Defendants in Count I, Mr. Reinhardt states:

49. Mr. Reinhardt incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

50. Defendants Rupp and Rouse arrested Mr. Reinhardt without any personal knowledge that Reinhardt had committed a crime. Moreover, on information and belief, they took

no additional steps to verify that there was probable cause to arrest Mr. Reinhardt after seizing him.

51. Moreover, Defendants did not secure a determination of probable cause by a neutral and detached judicial magistrate prior to Mr. Reinhardt's arrest.

52. Even after Mr. Reinhardt was arrested, Defendants did not obtain a prompt determination of probable cause by a neutral and detached judicial magistrate.

53. At all relevant times both before and after Mr. Reinhardt's arrest, no exigent circumstances existed to prevent Defendants from obtaining a determination of probable cause by a neutral and detached judicial magistrate.

54. During Mr. Reinhardt's warrantless detention, Defendants knowingly detained Mr. Reinhardt under a Wanted, meaning that it was certain that

55. Reinhardt would be held without any legal process.

56. Defendants' failure to promptly obtain judicial determinations of probable cause violated Mr. Reinhardt's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.

### COUNT II
### 42 U.S.C. § 1983 Monell Liability
### By Mr. Reinhardt on Behalf of All Putative Class Members
### Against Defendant Chesterfield

57. Pursuant to Defendant Chesterfield's policies and practices, Defendants Rupp and Rouse arrested an individual upon a Wanted without any attempt to work with officer who issued the Wanted in order to determine whether probable cause existed.

58. At all times relevant to this Complaint, Defendants Rupp and Rouse, as sworn members of the Chesterfield Police Department, were acting pursuant to either official policies or customs, practices and usages so pervasive as to constitute policies of Defendant Chesterfield.

59. At all relevant times, Defendant Chesterfield has employed a custom, practice and usage of issuing Wanteds and detaining individuals upon Wanteds in order to cause the arrest and detention of individuals without obtaining a prompt determination of probable cause by a neutral judicial magistrate in violation of the Fourth and Fourteenth Amendments. As such, Defendant Chesterfield is culpable pursuant to *Monell v. N.Y. Dep't of Soc. Svcs*, 436 U.S. 658 (1978), and its progeny.

60. In the alternative, policymakers for Defendant Chesterfield were aware that its officers issued Wanteds and arrested individuals upon Wanteds without obtaining a prompt judicial determination of probable cause. In this, they have been deliberately indifferent in their duties to correct, supervise, control and, when appropriate, discipline their officers who have committed these acts which violate the Fourth and Fourteenth Amendments. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

61. Defendant Chesterfield has the power and responsibility to prevent the practices described above and has failed and refused to do so.

62. As a direct and proximate result of the conduct of Defendants, Mr. Reinhardt has suffered injuries and damages, including but not limited to: being seized and deprived of his freedom; being detained in custody; and general fear and anxiety.

63. If Mr. Reinhardt prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## **DEMAND FOR JURY TRIAL**

64. Mr. Reinhardt respectfully requests a jury trial on any issues so triable by right.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Reinhardt, on behalf of the putative class, respectfully requests that this Court enter judgment in his favor and grant the following relief:

a) For a declaratory judgment that Defendants violated Mr. Reinhardt's Fourteenth Amendment protections against deprivations of protected liberty interests without due process when Defendants, without providing or affording individuals notice of and a process by which Wanteds can be challenged and/or quashed, nonetheless (i) issue Wanteds; (ii) make arrests pursuant to Wanteds; (iii) make arrests without seeking a judicial determination of probable cause; (iv) or make arrests without actually having probable cause at the time of arrest.

b) For a judgment awarding class-wide damages in favor of Mr. Reinhardt and the putative class against Defendant City of Chesterfield;

c) For an order and judgment granting Mr. Reinhardt's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d) For any other relief this Court deems just and proper.

DATED: November 20, 2023

Respectfully submitted,

KHAZAELI WYRSCH LLC

/s/ *John M. Waldron*
John M. Waldron, 70401MO
James Wyrsch, 53197MO
Javad Khazaeli, 53735MO
Rylan Smith, 74844MO
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
 (314) 400-7701 (Facsimile)

11

jack.waldron@kwlawstl.com
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com
rylan.smith@kwlawstl.com